UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENA FRIEDMAN,

Plaintiff,

v.

INTERSYSTEMS CORPORATION,

Defendant.

**0 5   1 0 7 3 8 DPW**

Civil Action No. RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____
DATE _____

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441(b) and (c), Defendant InterSystems Corporation

("InterSystems" or the "Company") hereby removes to this Court the above-captioned action

pending in the Superior Court Department of the Trial Court, Suffolk County, Massachusetts,

Civil Action No. 05-0894H (the "Action"). Removal of this Action is proper for the following

reasons:

## BASIS FOR REMOVAL

1.    Removal of this Action is proper under 28 U.S.C. § 1331 because Plaintiff Dena

Friedman's ("Plaintiff's") Complaint asserts claims under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, et seq. – a federal statute. See Complaint at ¶ 32 of Count I and ¶ 38 of

Count II. The claim therefore arises under the laws of the United States, as required by 28

U.S.C. § 1331. Pursuant to 28 U.S.C. § 1441(b) and (c), the Company may remove Plaintiff's

federal claim, along with any claim based on state law, to this Court.

2.    The Company has contemporaneously filed the attached Notice of Filing of

Notice of Removal, pursuant to 28 U.S.C. § 1446(d), with the Clerk of the Suffolk Superior

Court, and contemporaneously served both Notices on Plaintiff's counsel. The Notice of Filing of Notice of Removal is attached hereto as <u>Exhibit A</u>.

### TIMELINESS OF REMOVAL

3.     This Action was filed by Plaintiff in Suffolk Superior Court on or about March 8, 2005. Counsel for the Company accepted service of the Summons and Complaint on or about March 24, 2005. In accordance with 28 U.S.C. § 1446(a), all process, pleadings and orders entered by Suffolk Superior Court, including a true and accurate copy of the Summons and Complaint, are attached hereto as <u>Exhibit B</u>.

4.     This Notice of Removal is filed with this Court on a timely basis, as required by 28 U.S.C. § 1446(b), as it is being filed within thirty (30) days of the service of Plaintiff's Complaint upon the Company. Likewise, this Notice is being filed within thirty days of the Company's earliest date of actual notice of Plaintiff's Complaint, as the time of service is the first time the Company had possession of a copy of Plaintiff's Complaint.

**WHEREFORE**, InterSystems Corporation respectfully requests that this Action proceed in this Court as properly removed hereto.

Respectfully submitted,

INTERSYSTEMS CORPORATION,

By its attorneys,

HOLLAND & KNIGHT LLP

Liam T. O'Connell (BBO #558429)
Maura J. Gerhart (BBO #654695)
Holland & Knight LLP
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700

Dated:  April 12, 2005

## CERTIFICATE OF SERVICE

I certify that I have caused a true and correct copy of the foregoing Notice of Removal to be served on the parties listed below via first class mail on this 12th day of April, 2005:

Timothy K. Cutler, Esq.
Cutler P.C.
77 Franklin Street
Boston, MA  02110

Maura J. Gerhart, Esq.

# 2745169_v1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) __Dena Friedman v. InterSystems Corporation__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| ☐ | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
| ☒ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. |
| ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

    YES ☐    NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☒    NO ☐

    A. If yes, in which division do all of the non-governmental parties reside?

    Eastern Division ☒    Central Division ☐    Western Division ☐

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐    NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Liam T. O'Connell, Esq.__
ADDRESS __Holland & Knight LLP, 10 St. James Avenue, Boston, MA 02116__
TELEPHONE NO. __617-305-2020__

(CategoryForm.wpd - 2/15/05)

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Friedman, Dena

**DEFENDANTS**

InterSystems Corporation

(b) County of Residence of First Listed Plaintiff   Suffolk

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Timothy K. Cutler, Cutler P.C., 77 Franklin Street
Boston, MA 02110  (617) 338-8243

Attorneys (If Known)   Liam T. O'Connell
Holland & Knight LLP, 10 St. James Avenue
Boston, MA 02116 (617) 523-2700

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

Brief description of cause:
Gender Discrimination, Retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE   4/12/05

SIGNATURE OF ATTORNEY OF RECORD   Liam T. O'Connell

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPARTMENT

DENA FRIEDMAN,

                        Plaintiff,

    v.

INTERSYSTEMS CORPORATION,                      Civil Action No. 05-0894 H

                        Defendant.

## NOTICE OF FILING NOTICE OF REMOVAL

TO:    THE HONORABLE JUDGES OF THE SUPERIOR COURT

        NOTICE IS HEREBY GIVEN that on the twelfth day of April, 2005, Defendant

InterSystems Corporation filed a Notice of Removal of this action in the United States District

Court for the District of Massachusetts. A true and accurate copy of the Notice of Removal so

filed is attached hereto as Exhibit 1. Therefore, Defendant respectfully requests that this Court

proceed no further in this matter.

                        Respectfully submitted,

                        INTERSYSTEMS CORPORATION,

                        By its attorneys,

                        HOLLAND & KNIGHT LLP

                        Liam T. O'Connell (BBO #558429)
                        Maura J. Gerhart (BBO #654695)
                        Holland & Knight LLP
                        10 St. James Avenue
                        Boston, Massachusetts 02116
Dated: April 12, 2005   (617) 523-2700

## **CERTIFICATE OF SERVICE**

I certify that I have caused a true and correct copy of the foregoing Notice of Filing Notice of Removal to be served on the parties listed below via first class mail on this 12th day of April, 2005:

Timothy K. Cutler, Esq.
Cutler P.C.
77 Franklin Street
Boston, MA 02110

Maura J. Gerhart, Esq.

# 2745928_v1

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-0894 H

Dena Friedman

_____, Plaintiff(s)

v.

InterSystems Corporation

_____, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _Timothy K. Cutler_
_CUTLER P.C._
plaintiff's attorney, whose address is _77 Franklin Street Suite 200 Boston, MA_ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** ~~Esquire~~, Esquire, at Boston, the _23_ _____ day of
_____March_____ , in the year of our Lord two thousand _____five_____

_Michael Joseph Donovan_

Clerk/Magistrate

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

# COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss

Superior Court Department
Civil Action No.:

## 05-0894 H

| | |
|---|---|
| Dena Friedman | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| InterSystems Corporation, | ) |
| | ) |
| Defendant | ) |

RECEIVED

MAR 08 2005

SUPERIOR COURT · CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## COMPLAINT AND DEMAND FOR A JURY TRIAL

## PARTIES AND FACTUAL BACKGROUND

1. Defendant InterSystems Corporation ("Defendant ") is a closely held Massachusetts corporation with its principal office located at One Memorial Drive, Cambridge, Massachusetts.

2. Phillip T. Ragon ("Mr. Ragon") is the President, Treasurer, Shareholder and sole Director of Defendant.

3. Jerome P. Grove ("Mr. Grove") is the Chief Financial Officer and Secretary of Defendant.

4. Susan Ragon ("Mrs. Ragon") is the wife of Mr. Ragon and is the head of the Human Resources Department of Defendant.

1

5.     Plaintiff Dena Friedman ("Plaintiff") is an individual who resides in Boston, Massachusetts.

6.     In February of 2003, Plaintiff was hired by Ryan Brenneman ("Mr. Brenneman"), the then Chief Financial Officer ("CFO") for Defendant, as Manager of Customer Operations.

7.     Throughout her employment with Defendant, Plaintiff managed order processing, distribution and account receivables worldwide for Defendant.

8.     Plaintiff was responsible for overseeing the management of contracts, billing, orders and receivables for Defendant.  This entailed extensive contact with managers, as well as various department, sales, development, finance  and support personnel, in branches throughout the world  Plaintiff also had extensive contact with Defendant's customers.  Within four months of commencing working for Defendant, Plaintiff, amongst other accomplishments, improved receivables to billings by 78%, believed to be the best in the company's history.

9.     Plaintiff received high marks and praise for her performance by her immediate supervisor Mr. Brenneman.  Plaintiff received an outstanding written evaluation from Mr. Brenneman.

10.    Throughout her employment with Defendant, Plaintiff received high praise for her work and performance from executives and managers throughout the company, except by Mr. Grove.

11.    In or about August 2003, Mr. Brenneman was replaced by Mr. Grove as both CFO and Plaintiff's direct supervisor.

12.    Mr. Grove had a long personal and professional relationship with the Ragons.

13.    Mr. Grove had worked for Defendant in the past, and during that period of time Plaintiff is informed and believes that Mr. Grove had discriminated against other women.

14.    Upon Mr. Grove taking the position as CFO, he immediately began harassing and discriminating against Plaintiff because of her gender.

15.    Mr. Grove treated Plaintiff differently than he treated men. For example, he was outright condescending and derogatory in a sexist fashion towards Plaintiff. He belittled Plaintiff and her role in the Company because she was a woman, and continued to refer to plaintiff as a clerk, rather than as a manager. During meetings, Mr. Grove would exclude the females from participating in the discussions, or alternatively, disparage and ridicule them.

16.    Mr. Grove specifically targeted Plaintiff for adverse employment action because she was a female.

17.    When Plaintiff confronted Mr. Grove with his discriminatory behavior, he did not deny it.

18.    Plaintiff brought Mr. Grove's sexually discriminatory and harassing conduct to the attention of Mrs. Ragon, head of human resources.

19.    Plaintiff provided Mrs. Ragon with specific examples of Mr. Grove's sexually discriminatory and harassing conduct, as well as names of witnesses.

20.    Mrs. Ragon first refused to respond to Plaintiff's complaints. When Mrs. Ragon finally agreed to meet with Plaintiff, she dismissed Plaintiff's complaints out of hand and refused to conduct an investigation.

21. The only solution offered by Ms. Ragon was for plaintiff to leave the company.

22. Two days after notifying Mrs. Ragon of Mr. Grove's discriminatory conduct, Plaintiff was placed on probation.

23. When Plaintiff was placed on probation, she asked Mr. Grove the reason for the probation. He refused to explain the basis for the probation and told she would have to figure it out herself.

24. The COO of the company who was aware of Mr. Grove's discriminatory conduct acknowledged it was not appropriate and advised Plaintiff to seek legal counsel.

25. Then several days prior to being eligible for her year-end bonus, Plaintiff was terminated.

26. Plaintiff was then replaced by a man.

27. All the acts of wrongdoing described herein were done with the knowledge and consent of Mr. and Mrs. Ragon.

28. Rather than discipline Mr. Grove for his discriminatory conduct, Mr. Grove was promoted to Secretary of the company.

## MCAD FILING

29. On April 28, 2004, Plaintiff filed a complaint with Massachusetts Commission Against Discrimination ("MCAD").

30. On November 15, 2004, MCAD issued Plaintiff a right to sue letter, a copy of which is attached hereto as Exhibit "A".

## FIRST CAUSE OF ACTION
### Discrimination based on Gender

31.    Plaintiff incorporates herein each of the allegations set forth in paragraphs 1 through 30 above.

32.    The actions of Mr. Grove, Mr. Ragon and Mrs. Ragon on behalf of defendant as aforesaid discussed constitute discrimination, and thus, violate Chapter 151B of the Massachusetts General laws, as amended, and the Title VII of the Civil Rights Act of 1964 as amended.

33.    As a direct result of the unlawful actions of Defendant, Plaintiff suffered emotional distress.

34.    As a direct result of these wrongful actions, Plaintiff was placed on probation, her, employment was terminated, her bonus was denied and she had to seek employment elsewhere.  Thus, the Plaintiff has lost wages and benefits.

35.    As a direct result of these wrongful actions, Plaintiff is forced to incur attorney's fees and costs.

36.    In addition to the aforementioned, these wrongful actions by Defendant amount to a callous and intentional disregard for Plaintiff's civil rights.

## SECOND CAUSE OF ACTION
### Retaliation

37.    Plaintiff incorporates herein each of the allegations set forth in paragraphs 1 through 30 above.

38.    The actions of Mr. Grove, Mr. Ragon and Mrs. Ragon on behalf of defendant as aforesaid discussed constitute wrongful retaliation, and thus, violate

Chapter 151B of the Massachusetts General laws, as amended, and the Title VII of the Civil Rights Act of 1964 as amended.

39.    The actions of Mr. Grove, Mr. Ragon and Mrs. Ragon on behalf of defendant as aforesaid discussed constitute wrongful retaliation, and thus, violate Chapter 149 et seq. of the Massachusetts General Laws.

40.    The actions of Mr. Grove, Mr. Ragon and Mrs. Ragon on behalf of defendant as aforesaid discussed constitute wrongful retaliation, and thus, violate the public policy of Massachusetts.

41.    As a direct result of the unlawful actions of Defendant, Plaintiff suffered emotional distress.

42.    As a direct result of these wrongful actions, Plaintiff was placed on probation, her employment was terminated, her bonus was denied and she had to seek employment elsewhere. Thus, the Plaintiff has lost wages and benefits.

43.    As a direct result of these wrongful actions, Plaintiff is forced to incur attorney's fees and costs.

44.    In addition to the aforementioned, these wrongful actions by Defendant amount to a callous and intentional disregard for Plaintiff's civil rights.

## THIRD CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing

45.    Plaintiff incorporates herein each of the allegations set forth in paragraphs 1 through 30 above.

46.    Defendant breached the covenant of good faith and fair dealing by terminating Plaintiff days prior to her bonus becoming due and owing in order to avoid payment of said bonus.

6

47.    Plaintiff has thus been damaged in sum to be proven at trial, but not less than her bonus.

## FOURTH CAUSE OF ACTION
### Breach of Employment Contract

48.    Plaintiff incorporates herein each of the allegations set forth in paragraphs 1 through 30 above.

49.    Plaintiff had an employment contract with Defendant wherein a portion of her compensation would be in the form of a bonus.

50.    Plaintiff fully performed her duties and responsibilities under the agreement.

51.    Defendant failed to fulfill its duties and obligations by not paying Plaintiff her bonus.

52.    Plaintiff has thus been damaged in sum to be proven at trial, but not less than her bonus.

## FIFTH CAUSE OF ACTION
### Services and Labor (Unjust Enrichment)

53.    Plaintiff incorporates herein each of the allegations set forth in paragraphs 1 through 30 above.

54.    Plaintiff provided services and labor at Defendant's request.

55.    Defendant knew those services and labor were being provided.

56.    Defendant accepted Plaintiff's services and labor.

57.    Defendant has refused to pay Plaintiff for the value of her services and labor, as well as the benefit received thereof.

58.    As a direct and proximate consequence of Defendant's conduct, the Plaintiff suffered economic injuries and defendant was unjustly enriched.

**WHEREFORE**, for all the foregoing reasons, the Plaintiff hereby prays that this Court enter a judgment in his favor, and further, that the Court order:

a.   That the Defendant pay the Plaintiff compensatory damages;

b.   That the Defendant pay the Plaintiff punitive damages;

c.   That the Defendant pay the Plaintiff the costs of bringing this action including but not limited to attorneys fees and costs;

d.   Prejudgment interest, and

e.   Any additional relief that this Court deems equitable, just and proper.

## DEMAND FOR JURY

Plaintiff hereby requests a trial by Jury

THE PLAINTIFF
Dena Friedman

March 4, 2005

Timothy K. Cutler, BBO No. 636124
CUTLER P.C.
77 Franklin Street
Boston, MA  02110
Telephone: (617) 338-8243
Fax: (617) 695-2778

8

# EXHIBIT A

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

*11/15/04*

Date Issued: 11/15/2004

Timothy K. Cutler, Esq.
Cutler McLeod, P.C.
77 Franklin Street
Boston, MA 02110

Re:    Complainant(s)    Dena Friedman

                                                           Vs.

          Respondent(s)    InterSystems Corporation

**MCAD Docket Number: 04BEM01488**
**EEOC/HUD Charge Number: 16CA401763**

Dear Counsel:

The Commission has received notice that a civil action is being filed in ***Superior Court*** in the above-referenced matter. Pursuant to M.G.L.A. 151B, Section 9 (Chapter 478 of the Acts of 1974), the complaint before the Commission is hereby dismissed without prejudice as to the merits.

**Please be advised that pursuant to 804 CMR 1.15(2), the parties are required to serve upon the Commission's General Counsel a copy of any final order obtained in court. In addition, any party filing an appeal of such final order is required to serve a notice of appeal upon the Commission's General Counsel.**

Please be advised the Complainant is barred from subsequently bring a complaint on the same matter before this Commission.

Very truly yours,

*Walter J. Sullivan Jr. (pk)*

Walter J. Sullivan Jr.
Commissioner

Cc:

Liam T. O'Connell, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

# THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
### ONE ASHBURTON PLACE
#### BOSTON, MA 02108-1518]

Tel: (617) 994-6000          TTY: (617) 994-6196          Fax: (617) 994-6024

TO:        File
FR:        Robin Edwards-King
RE:        Dena Friedman v. InterSystems Corporation
MCAD #     04BEM01488
EEOC #     16CA401763 (25+ employees)
DATE:      November 15, 2004


## RECOMMENDATION: CASE CLOSURE – WITHDRAWN IN ORDER TO FILE A PRIVATE RIGHT OF ACTION ON THE SAME MATTER IN CIVIL COURT


On April 28, 2004 Complainant filed a complaint with the Massachusetts Commission Against Discrimination and the EEOC. Complainant alleged Respondents discriminated against her on or around December 29, 2003 on the basis of Sex and Retaliation in violation of M.G.L. c.151B§4 (1)(4) and Title VII.

On November 9, 2004 Complainant's Counsel submitted a request to withdraw this complaint from the MCAD and EEOC in order to pursue the matter as a private right of action in civil court.

The Commission finds no reason to investigate this matter further. Therefore, it is recommended that Complainant be allowed to withdraw this complaint.


Robin Edwards-King
Administrative Assistant

# Holland+Knight

Tel  617 523 2700
Fax  617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
www.hklaw.com

March 30, 2005

Liam T. O'Connell
617 305 2020
ltoconnell@hklaw.com

Timothy K. Cutler, Esq.
Cutler P.C.
77 Franklin Street, 2nd Floor
Boston, MA  02110

Re:    Dena Friedman v. InterSystems Corporation
       <u>Suffolk Superior Court, Case No. 05-0894H</u>

Dear Tim:

Enclosed you will find my acceptance of the service of the complaint and summons in the above-referenced action on behalf of InterSystems Corporation.

Thank you for your assistance in this matter.

Sincerely yours,

HOLLAND & KNIGHT LLP

Liam T. O'Connell

LTO/wmg

Enclosure

# 2732623_v1

Annapolis • Atlanta • Bethesda • Boston • Bradenton • Chicago • Fort Lauderdale • Jacksonville • Lakeland • Los Angeles
Miami • New York • Northern Virginia • Orlando • Portland • Providence • Rancho Santa Fe • Sacramento • St. Petersburg
San Antonio • San Francisco • Seattle • Tallahassee • Tampa • Washington, D.C. • West Palm Beach
Beijing • Caracas* • Helsinki* • Mexico City • Tel Aviv* • Tokyo • *Representative Office



# CUTLER P.C.

C O U N S E L L O R S    A T    L A W

March 23, 2005

Liam T. O'Connell, Esq.
Holland + Knight
10 St. James Avenue, 11ᵗʰ Floor
Boston, MA 02116

      Re:   **Dena Friedman v. InterSytems Corporation, Suffolk Superior Court, Case No. 05-0894H**

Dear Liam:

      Per our discussion wherein you agreed to accept service of Ms. Friedman's complaint, enclosed is a copy of said complaint along with a summons.  Please sign the acknowledgement below and return this letter, acknowledge by you, to me at your earliest opportunity.

      Thank you for your cooperation in this matter.

                          Sincerely,
                          CUTLER P.C.

                          Timothy K. Cutler

I hereby accept service of the complaint and summons in the above-referenced action of behalf of ItnerSystems Corporation.

Liam T. O'Connell, Esq.

Enc.



# CUTLER P.C.

C O U N S E L I O R S   A T   L A W

April 1, 2005

Clerk
Suffolk Superior Court
90 Devonshire Street
Boston, Massachusetts 02109

Re:     <u>Dena Friedman v. InterSystems Corporation</u>
<u>Suffolk Superior Court, Case No. 05-0894H</u>

Dear Sir or Madam:

Enclosed please the following document:

- Affidavit of Timothy K. Cutler Re: Service of Complaint

If you have any questions or require any additional information, please do not hesitate to contact us.

Thank you for your time and attention in this matter.

Sincerely,
CUTLER P.C.

Robin Barron
Paralegal

reb
Encl.
cc: Liam T. O'Connell, Esq.

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT DEPARTMENT
CASE NO. 05-0894H

DENA FRIEDMAN )
    Plaintiff )
 )
v. )
 )
 )
INTERSYSTEMS CORPORATION )
    Defendant )
 )
 )

## AFFIDAVIT OF TIMOTHY K. CUTLER RE: SERVICE OF COMPLAINT

I, Timothy K. Cutler, do depose and swear the following:

1. I am the counsel for the Plaintiff Ms. Dena Friedman in the above referenced case.

2. I contacted the counsel for the Defendant InterSystems Corporation, about the acceptance of service of the complaint and summons. Counsel agreed to accept the complaint and summons on the Defendant's behalf.

3. Defendant's counsel signed an acknowledgment of acceptance of service.

4. A copy of the acknowledgement of acceptance of service is attached hereto and marked as Exhibit A.

SIGNED UNDER THE PENALTIES OF PERJURY ON THIS ___/___ DAY OF APRIL 2005.

Timothy K. Cutler

## CERTIFICATE OF SERVICE

I hereby certify that on ___/___ of April 2005, a true copy of this document was served via first class mail to the following individual:

Liam T. O'Connell
Holland + Knight LLP
10 St. James Avenue
Boston, Massachusetts 02116

Timothy K. Cutler

# EXHIBIT A



# CUTLER P.C.

C O U N S E L L O R S   A T   L A W

March 23, 2005

Liam T. O'Connell, Esq.
Holland + Knight
10 St. James Avenue, 11th Floor
Boston, MA 02116

Re:     **Dena Friedman v. InterSytems Corporation, Suffolk Superior Court, Case No. 05-0894H**

Dear Liam:

Per our discussion wherein you agreed to accept service of Ms. Friedman's complaint, enclosed is a copy of said complaint along with a summons. Please sign the acknowledgement below and return this letter, acknowledge by you, to me at your earliest opportunity.

Thank you for your cooperation in this matter.

Sincerely,
CUTLER P.C.

Timothy K. Cutler

I hereby accept service of the complaint and summons in the above-referenced action of behalf of ItnerSystems Corporation.

Liam T. O'Connell, Esq.

Enc.

# CUTLER P.C.

COUNSELLORS AT LAW

April 1, 2005

Mr. Liam T. O'Connell, Esq.
Holland + Knight
10 St. James Avenue
Boston, Massachusetts 02116

Re:    **Dena Friedman v. InterSystems Corporation**

Dear Mr. O'Connell

Enclosed please find Dena Friedman's First Set of Interrogatories Propounded on InterSystems Corporation. Please respond within thirty days as the rules set forth.

If you have any questions or require additional information, please do not hesitate to contact us.

Sincerely,
CUTLER P.C.

Robin Barron
Paralegal

reb
Encl.

# COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss

Superior Court Department
Civil Action No.:

| | |
|---|---|
| Dena Friedman | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| InterSystems Corporation, | ) |
| Defendant | ) |

## Plaintiff Dena Friedman's First Set of Interrogatories Propounded on Defendant InterSytems Corporation

Plaintiff Dena Friedman hereby serves the following interrogatories upon InterSytems Corporation in accordance with Rule 33.

## DEFINITIONS

"YOU" or "YOUR" means InterSystems Corporation, and its officers, shareholders, directors, managers, employees and agents.

"COMPANY" means InterSystems Corporation.

"PLAINTIFF" means Dena Friedman.

"MCAD" means Massachusetts Commission Against Discrimination.

1

"**IDENTIFY**" when referring to a person or witnesses, means the name of the person; the person's title or position within the **COMPANY**, the person's last known address, and person's last known telephone number.

"**IDENTIFY**" when referring to a **DOCUMENT**, means the title, date, author, recipient(s), and subject matter of the **DOCUMENT**.

"**RELATE TO**" means relating to, circumstances, acts, situations, concerning, referencing, discussing or mentioning.

"**DOCUMENT**" means shall be interpreted in the broadest sense to include anything upon which information is recorded, preserved, or reduced to tangible or electronic form. This includes, without limitation, any written, printed, typed, e-mail, spreadsheets, or other graphic matter of any kind or nature, whether sent or received or neither, including drafts and copies bearing any marks (such as initials, comments, notations or notes) not found on the original.

The term **DOCUMENT** as used herein extends to all documents in **YOUR** actual possession or constructive possession of, **YOUR** agents, servants, employees, attorneys, accountants, and/or any person or entity acting on its behalf. A **DOCUMENT** is deemed in the actual or constructive possession, custody or control of **YOU** if the document is in the physical custody of any person or entity that **YOU**:

(1)     Have the right, by control, possession, contract, statute or otherwise to use, inspect, examine or copy such **DOCUMENT** on any terms;

(2)     Has an understanding – express or implied – that it may use, inspect, examine, and/or copy the **DOCUMENT** on any terms; or

As a practical matter has been/would be able to use, inspect, examine or copy such **DOCUMENT** when/if it sought to do so.

"**CORRESPONDENCE**" or "**COMMUNICATIONS**" means the act or fact of communicating, including person to person conversations, telephone conversations and conferences, letters, faxes, telexes, memoranda, electronic messages, meetings or any occasion of joint or mutual presence, notes, or passing of a documents from one person to another.

## INTERROGATORIES

1. Provide the name and title of each person participating in and/or providing information used in the preparation of the responses to these interrogatories.

2. Describe with specific particularity and detail each and every instance and/or circumstance in which **PLAINTIFF'S** "work performance was sufficiently substandard" as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

3. **IDENTIFY** each and every person and witness who has knowledge that supports **YOUR** claim that **PLAINTIFF'S** "work performance was sufficiently substandard" as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

4. **IDENTIFY** each senior management member of the **COMPANY** that is referenced or contemplated in the following statement from **YOUR** Response filed with **MCAD** (as attached hereto as Exhibit "A"):

> However, by December 29, 2003, it was apparent to InterSystems' senior management that Ms. Friedman either could not, or would

3

not, improve upon her performance, and that she had become a disruptive presence within the work force.

5. Describe in specific detail each instance that **PLAINTIFF** was a "disruptive presence in the work force" as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

6. **IDENTIFY** each every person and witness who has knowledge that supports **YOUR** claim that **PLAINTIFF** was a "disruptive presence in the work force" as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

7. **IDENTIFY** each person that was involved in the decision to terminate **PLAINTIFF'S** employment with the **COMPANY**.

8. As to each person identified in **YOUR** response to interrogatory 6 above, describe in specific detail each person's involvement in the termination of **PLAINTIFF**.

9. Set forth and describe in specific detail each and every fact and circumstance that **PLAINTIFF** "failed to meet the legitimate business expectations of the Company " as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

10. **IDENTIFY** each every person who has knowledge that supports **YOUR** claim that **PLAINTIFF** "failed to meet the legitimate business expectations of the Company", as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

11. Set forth and describe in specific detail each and every fact that supports **YOUR** claim that "[f]rom the beginning of her employment, Ms. Friedman demonstrated a lack of urgency in her execution of work responsibilities, failed to consistently provide timely reports and analysis of the information and date contained within such reports, and failed to provide the strong disciplined leadership necessary for her team's operation success", as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

12. **IDENTIFY** all **DOCUMENTS** that support **YOUR** claim that "[f]rom the beginning of her employment, Ms. Friedman demonstrated a lack of urgency in her execution of work responsibilities, failed to consistently provide timely reports and analysis of the information and date contained within such reports, and failed to provide the strong disciplined leadership necessary for her team's operation success", as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

13. **IDENTIFY** each and every person and witness with knowledge that supports **YOUR** claim that "[f]rom the beginning of her employment, Ms. Friedman demonstrated a lack of urgency in her execution of work responsibilities, failed to consistently provide timely reports and analysis of the information and date contained within such reports, and failed to provide the strong disciplined leadership necessary for her team's operation success", as referenced in **YOUR**

Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

14. Set forth and describe in specific detail each and every comment and statement made by Mr. Brennenman to Ms. Ragon regarding **PLAINTIFF'S** performance as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

15. Set forth and describe in specific detail all efforts and each and every step **YOU** took to investigate **PLAINTIFF'S** claims of harassment and discrimination.

16. **IDENTIFY** all persons **YOU** interviewed pursuant to and **RELATING TO YOUR** investigation of **PLAINTIFF'S** claims of discrimination and harassment.

17. **IDENTIFY** all **DOCUMENTS RELATING TO** and documenting **YOUR** investigation of **PLAINTIFF"S** claims of harassment and discrimination.

18. Set forth and describe in specific detail all facts that support **YOUR** claim that "Ms. Friedman demonstrated a critical lack of knowledge of the job duties and responsibilities of those employees who reported to her, and of those other employees who were involved in the billing and collection procedures for which Ms. Friedman was responsible" as referenced in **YOUR** Response to **PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto and labeled as Exhibit "A".

19. **IDENTIFY** all persons and witnesses with knowledge that supports **YOUR** claim that "Ms. Friedman demonstrated a critical lack of knowledge of the job duties and responsibilities of those employees who reported to her, and of those other employees who were involved in the billing and collection procedures for which

6

Ms. Friedman was responsible" as referenced in **YOUR** Response to

**PLAINTIFF'S** claims filed with the **MCAD**, a copy of which is attached hereto

and labeled as Exhibit "A".

20. **IDENTIFY** all senior managers **YOU** claim **PLAINTIFF** contacted within the

**COMPANY** and to whom she complained to about Mr. Grove.

21. Set forth and describe in specific detail all comments and **COMMUNICATIONS**

made by **PLAINTIFF** about Mr. Groves that constitute the basis of **PLAINTIFF**

being terminated from the **COMPANY**.

22. Set forth and describe with specific detail each and every reason plaintiff was

terminated from the **COMPANY**.

23. **IDENTIFY** the person or persons who performed **PLAINTIFF'S** duties and

responsibilities prior to the hiring of Jennifer Stone.

24. Set forth and describe with specific detail each every fact supporting **YOUR**

affirmative defenses.

25. **IDENTIFY** each and every witness that has knowledge that supports **YOUR**

affirmative defenses.

26. **IDENTIFY** each and every **DOCUMENT** that supports **YOUR** affirmative defenses.

Plaintiff,
By her attorneys,

Timothy K. Cutler BBO #636124
CUTLER P.C.
77 Franklin Street
Suite 200
Boston, MA 02110
(617) 338-8243
www.cutlerlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on ___ of April 2005, a true copy of this document was served via first class mail to the following individual:

Liam T. O'Connell
Holland + Knight
10 St. James Avenue
Boston, Massachusetts 02116

_____
Timothy K. Cutler

# EXHIBIT A



Holland & Knight

Tel   617 523 2700
Fax   617 523 6850

Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
www.hklaw.com

**_VIA HAND DELIVERY_**

August 6, 2004

Liam T. O'Connell
617 305 2020
ltoconnell@hklaw.com

Ms. Robin Edwards
Acting Supervisor
Attorney Assisted Unit (AAU)
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, MA 02108

> Re:    Dena Friedman v. InterSystems Corporation
>        <u>MCAD Docket No. 04BEM01488; EEOC No. 16CA401763</u>

Dear Ms. Edwards:

This firm represents respondent InterSystems Corporation ("InterSystems" or the "Company") in the above-referenced matter. On behalf of the Company, we write to respond to the charge of gender discrimination and wrongful retaliation that complainant Dena Friedman ("Ms. Friedman") has filed against the Company.

By her Charge of Discrimination, Ms. Friedman claims that InterSystems discriminated against her on the basis of her gender and wrongfully retaliated against her when the Company terminated her employment in December of 2003. InterSystems vehemently denies Ms. Friedman's claim of discrimination. Ms. Friedman was hired as InterSystems' Manager of Customer Operations in February of 2003. Within six months of her hire, Ms. Friedman's work performance was sufficiently substandard that the Company provided a written counseling statement to Ms. Friedman. By that statement, InterSystems formally notified Ms. Friedman that "the company is not satisfied with the performance of Customer Operations." Within that same document, InterSystems set forth the Company's expectation that Ms. Friedman's performance would improve over the "next thirty to sixty days." Unfortunately, Ms. Friedman's performance continued to lag below expectations. Accordingly, Ms. Friedman was issued another written counseling, and placed on probationary status, effective December 12, 2003. However, by December 29, 2003, it was apparent to InterSystems' senior management that Ms. Friedman either could not, or would not, improve upon her performance, and that she had become a disruptive presence within the work force. As a result, InterSystems had no choice but to terminate Ms. Friedman's employment on December 29, 2003. Ms.

Friedman's gender had absolutely nothing to do with InterSystems' decision to terminate her employment – the decision was based solely on her failure to meet the legitimate business expectations of the Company and on her disruptive conduct. In short, the record evidence in this case conclusively demonstrates that InterSystems acted in a manner consistent with state and federal law, and did not discriminate or retaliate against Ms. Friedman on the basis of her gender.

## FACTS

### A. Background.

InterSystems is a Cambridge, Massachusetts based corporation that is engaged in the business of creating, developing and supporting software designed to empower professional application developers. The Company offers products that are aimed at the application development and application integration management. InterSystems employs approximately two hundred employees at its Cambridge offices.

### B. InterSystems' Commitment to Promoting and Maintaining a Non-Discriminatory Work Environment.

Both as a matter of philosophy and policy, InterSystems is committed to ensuring that no employee is subjected to any form of discrimination. This commitment is evidenced by the Company's non-discrimination policy, by which InterSystems sets forth a policy that "prohibits discrimination or harassment in any aspect of personnel relations and makes conscious, deliberate steps to assure equal employment opportunity for all." See Exhibit A attached hereto. InterSystems' commitment to a non-discriminatory work environment is reflected further by the Company's Sexual Harassment Policy, by which the Company emphasizes its commitment to "the right of all persons to hold employment without suffering sexual harassment or unlawful discrimination of any kind." See Exhibit B attached hereto. In sum, InterSystems' personnel policies reveal it to be a Company that does not discriminate against employees on the basis of gender, but rather, one that is committed to equal employment opportunity and a non-discriminatory work environment for all employees.

### C. Ms. Friedman's Employment.

InterSystems hired Ms. Friedman on February 18, 2003, as the Company's Manager of Customer Operations. In this position, Ms. Friedman assumed responsibility for the processing of new orders of InterSystems' product, and for the billing and cash collections of the Company. More specifically, Ms. Freidman was

responsible for the oversight of customer orders and the operational support of customer accounts, and she and her staff were responsible for tracking customer invoices/payments and overseeing customer collections. Ms. Friedman assumed the job responsibilities that previously were performed by a male employee, and at a higher salary than that male employee – Ms. Friedman was hired at an annual target compensation of $130,000. See Exhibit B attached hereto. Ms. Friedman was hired on the recommendation of Mr. Ryan Brenneman, who at that time was InterSystems' Chief Financial Officer, a recommendation that was approved by Mr. Phillip T. Ragon, InterSystems' Chief Executive Officer.

Unfortunately, and despite the best efforts and best hopes of the Company, Ms. Friedman failed to perform her job responsibilities in a satisfactory manner. Initially, Ms. Friedman reported directly to Mr. Brenneman. From the beginning of her employment, Ms. Friedman's job performance was lacking in several key respects. More specifically, Ms. Friedman demonstrated a lack of urgency in her execution of work responsibilities, failed to consistently provide timely reports and analysis of the information and data contained within such reports, and failed to provide the strong disciplined leadership necessary for her team's operational success. On several occasions during the Spring of 2003, Mr. Brenneman raised his concerns about Ms. Friedman's performance with Ms. Susan Ragon, InterSystems' Vice President of Finance, Administration and Recruitment. Ms. Ragon was concerned about these reports, as she believed the Manager of Customer Operations position to be a key one, and a position that demanded a strong leader. Many of Ms. Friedman's performance deficiencies were addressed in Mr. Brenneman's formal performance review of Ms. Friedman, completed in early August of 2003. See Exhibit C attached hereto.

Notably, Mr. Brenneman himself had several performance issues. Although Mr. Brenneman gave Ms. Friedman a good numerical performance rating, the numerical ratings were inconsistent with his comments. By mid-August of 2003, Mr. Ragon had determined that Mr. Brenneman was not the right person for the Chief Financial Officer position, and as a result, InterSystems terminated his employment in August, 2003.

Following Mr. Brenneman's termination, Mr. Jerry Grove was hired as the Chief Financial Officer of InterSystems. Mr. Grove had previously served as InterSystems' Chief Financial Officer, and Mr. Ragon and Ms. Ragon were familiar with his management approach. At the time that Mr. Grove assumed the position of Chief Financial Officer, Ms. Ragon was concerned that Ms. Friedman's "hands off" management style would not serve the needs of the business, and would not mesh with the "hands on" management style of Mr. Grove. Thus, at the time Mr. Grove was hired, Ms. Ragon suggested to Mr. Grove that Ms. Friedman be

terminated. Mr. Grove, however, asked that he be given some time to evaluate Ms. Friedman's performance before the Company took such action, and that he have an opportunity to counsel Ms. Friedman and work with her to improve her performance before the Company terminated her employment. Ms. Ragon agreed with Mr. Grove's request, but asked Mr. Grove to issue formal counseling statements to Ms. Freidman, so that the Company's expectations of improved performance would be clear to her. On August 22nd and August 28th, Mr. Grove met with Ms. Friedman as directed by Ms. Ragon, and counseled Ms. Friedman about the Company's concerns with her performance and its expectations of her future performance. This counseling was documented by Mr. Grove in a written counseling statement dated August 28, 2003. See Exhibit D attached hereto.

Over the next several months, Mr. Grove worked to improve Ms. Friedman's job performance, and provide honest feedback to Ms. Friedman. Unfortunately, Ms. Friedman's performance continued to lag, and as a result, Mr. Grove's feedback often took the form of critical assessment of Ms. Friedman's failure to meet his performance expectations. For example, Ms. Friedman failed to immerse herself in the details of InterSystems' billing and collection practices, and was unable to provide an accurate summary of that process when asked to produce one by Mr. Grove. Moreover, Ms. Friedman demonstrated a critical lack of knowledge of the job duties and responsibilities of those employees who reported to her, and of those other employees who were involved in the billing and collection procedures for which Ms. Friedman was responsible.

By December of 2003, Mr. Grove had concluded that despite his best efforts, Ms. Friedman was either unwilling to, or unable to, meet the performance expectations of the Manager of Customer Operations position. In early December, Mr. Grove asked Ms. Friedman to provide critical information to him – he asked Ms. Friedman to provide a forecast for revenue/cash collection by year-end, as those numbers were required to calculate bonus payments to InterSystems' management team. Ms. Friedman failed to deliver this critical information to Mr. Grove, and instead, merely provided budget numbers that had been prepared in February – ten months prior. On December 5, 2003, Mr. Grove and Ms. Friedman discussed this issue, and Mr. Grove's displeasure with Ms. Friedman's performance.

Shortly thereafter, Mr. Grove prepared a performance review that clearly articulated what he viewed as the shortcomings in Ms. Friedman's performance, see Exhibit E attached hereto, and a written counseling statement by which he placed Ms. Friedman on probation, and informed her that she was subject to termination of employment, at any time, if her performance did not immediately improve. See Exhibit F attached hereto. In the probationary notice, as is InterSystems' standard practice, Mr. Grove informed Ms. Friedman that "[w]hat you need to do to continue

Ms. Robin Edwards
August 6, 2004
Page 5

your employment is to convince me that knowing everything that I now know that I would hire you. Right now, I would not." Id. This probation notice was provided to Ms. Friedman on December 12, 2003.

Unknown to Mr. Grove, Ms. Friedman had sent an e-mail to Ms. Ragon on the evening of December 10th, by on which she requested a meeting with Ms. Ragon to discuss the meeting Ms. Friedman had had with Mr. Grove on December 5th. In the e-mail to Ms. Ragon, Ms. Friedman had complained about Mr. Grove's negative attitude and behavior, and a "building morale problem". In addition, Ms. Friedman opined that she believed she was a "target" of Mr. Grove because she was a woman.

Ms. Ragon responded to Ms. Friedman's e-mail by scheduling a meeting with her on Friday, December 12th. At that meeting, Ms. Friedman and Ms. Ragon discussed Ms. Friedman's concerns about Mr. Grove, and his management style. Ms. Friedman did not provide any factual support for her claim that she was a "target" because of her gender. Rather, Ms. Friedman's complaints to Ms. Ragon took the form of complaints about Mr. Grove's management style, that he was a very demanding boss, and that he was displeased with Ms. Friedman's performance. Ms. Friedman could not provide any basis for the suggestion that he was demanding of her because she was a woman. Accordingly, Ms. Ragon concluded that Ms. Friedman's management style was at odds with the style that Mr. Grove demanded – Mr. Grove expected Ms. Friedman to be a "hands on" manager who would be intimately familiar with the details of her operation; Ms. Friedman had adopted a much more "hands off" style of management. During the meeting of December 12th, Ms. Ragon and Ms. Friedman also discussed the probationary notice that had been given to Ms. Friedman earlier in that day, and Mr. Grove's expectations for improvement.[1]

Unfortunately, Ms. Friedman's performance did not improve during the weeks immediately following Mr. Grove's counseling of Ms. Friedman. Moreover, Ms. Friedman became a disruptive force in the workplace. Ms. Friedman began contacting other senior managers within the Company, and complained to them about how difficult a boss Mr. Grove was, thus undermining his position and authority – and effectiveness – within the Company. In mid-December 2003, Mr. Terry Ragon, while traveling in Australia on business, learned of Ms. Friedman's inappropriate and disruptive "campaign" against Mr. Grove. Mr. Ragon viewed Ms. Friedman's conduct – as a key employee of the Company – as grossly inappropriate, and called Ms. Ragon from Australia, directing her to terminate Ms. Friedman's

---

[1] Of significant note, when Mr. Grove placed Ms. Friedman on probation on December 12th, he did not know that Ms. Friedman had complained about gender discrimination to Ms. Ragon on December 10th, or that Ms. Ragon and Ms. Friedman were meeting on December 12th.

Ms. Robin Edwards
August 6, 2004
Page 6

employment. Accordingly, on December 29, 2003, InterSystems terminated Ms. Friedman's employment. That decision, made by Mr. Ragon - the President and Chief Executive Officer who had hired Ms. Friedman only eleven months earlier - had absolutely nothing to do with Ms. Friedman's gender or her complaint to Ms. Ragon.

InterSystems did not immediately "hire" a replacement for Ms. Friedman. Rather, the Company initially had other employees assume the responsibilities of the Manager of Customer Operations position. Over the following months, InterSystems interviewed several candidates for the job, and in July 2004, hired another **female** - Ms. Jennifer Stone – as the Company's new Manager of Customer Operations. Ms. Friedman is simply wrong in claiming that InterSystems replaced her with a male.

## ARGUMENT

Ms. Friedman claims that InterSystems discriminated against her and retaliated against her on the basis of her gender. There is absolutely no factual or legal basis for this claim.

As a threshold matter, Ms. Friedman cannot prove her gender discrimination claim for two reasons. First, she cannot prove a *prima facie* case of discrimination because her job performance was unsatisfactory at the time of her discharge. Second, she cannot show, as she must, that she was treated differently on the basis of her gender. Succinctly stated, there is absolutely no evidence to even suggest that InterSystems discharged Ms. Friedman because she is a woman.

To prove a *prima facie* case of discrimination, an employee must show that (1) she belongs to a protected class; (2) she adequately performed her job duties; (3) she suffered an adverse employment action; and (4) she was treated differently than employees outside the protected class. *Lipchitz v. Raytheon Co.*, 439 Mass. 493, 502 (2001); *Zhang v. Mass. Inst. of Tech.*, 46 Mass. App. Ct. 597 (1999). Ms. Friedman can demonstrate that she is in a protected class, and that she suffered an adverse employment action. At that point, however, Ms. Friedman's claim collapses for the most basic of reasons – she simply cannot demonstrate that she was performing her job duties in an adequate manner. In fact, Ms. Friedman was performing her job duties in a wholly **inadequate** manner – having been hired in a senior position as Manager of Customer Operations, Ms. Friedman failed to meet the Company's legitimate business expectations, and failed to improve her performance after specific and direct counseling that was intended to improve her performance. By any reasonable standard, Ms. Friedman's job performance was **not adequate**, and her *prima facie* case of discrimination must fail as a result.

Ms. Robin Edwards
August 6, 2004
Page 7

Moreover, there is absolutely no basis for a contention that Ms. Friedman was treated differently than male employees. Indeed, although Ms. Friedman makes a blanket assertion that Mr. Grove "has a history of discriminating against women", she offers absolutely no factual support for this assertion. The relevant credible evidence in this matter demonstrates that Mr. Brenneman, Ms. Ragon and Mr. Grove all had issues with Ms. Friedman's performance, and that it was Mr. Grove who intervened to save her job in August of 2003 – asking that she be given an opportunity to demonstrate to him that she was capable of performing the job responsibilities of her position. Moreover, the Company had concerns about Mr. Brenneman's job performance as well - and he - **Ms. Friedman's male boss - was terminated by the Company in August of 2003.** Finally, Ms. Friedman was not - contrary to her unsupported allegations – replaced by a male employee. In fact, InterSystems hired a **female** as Ms. Friedman's replacement as the Manager of Customer Operations.

Ms. Friedman's claim of retaliation also must fail. By her claim, Ms. Friedman seems to suggest that she was terminated because she complained to Ms. Ragon about Mr. Grove, his attitude and behavior, and her assertion that she was a "target" because she was a woman. Ms. Friedman's allegation has no factual or legal merit. As an initial matter, Mr. Grove did not have any knowledge of Ms. Friedman's complaint to Ms. Ragon when he placed her on probation on December 12, 2003. Moreover, Mr. Ragon made the decision to terminate Ms. Friedman -- and his decision was made solely on the basis of Ms. Friedman's performance issues and unprofessional conduct as a manger of the Company -- it had absolutely nothing to do with Ms. Friedman's "complaint" to Ms. Ragon (or her gender), and Ms. Friedman does not and cannot provide any facts to even suggest otherwise.

Finally, Ms. Friedman's charge of discrimination and retaliation is undermined by the fact that the same individual who approved her hire in February 2003 -- knowing she was a female – was the individual who directed that she be terminated in December 2003. More specifically, Terry Ragon, Chief Executive Officer of InterSystems, approved the decision to hire Ms. Friedman, and made the decision to fire her less than one year later. It simply is not credible to conclude that Mr. Ragon would approve of the hire a female Manager of Customer Operations in February 2003, only to discharge her eleven months later **because** she is a woman. See *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993) ("where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer"). Moreover, as noted within, Mr. Ragon recently approved Mr. Grove's recommendation to hire another **female** as Ms. Friedman's replacement as Manager of Customer Operations.

Ms. Robin Edwards
August 6, 2004
Page 8

## CONCLUSION

Ms. Friedman's claim of gender discrimination is devoid of any factual or legal merit. In fact, Ms. Friedman's assertions are entirely contradicted by abundant evidence of the legitimate non-discriminatory business reasons for the Company's actions towards Ms. Friedman. Although Ms. Friedman bears the burden of proof, her charge lacks any material or substantive proof. Accordingly, and on the basis of the foregoing facts, authorities and arguments, InterSystems respectfully asks the Commission to dismiss Ms. Friedman's charge of discrimination in its entirety.

## AFFIRMATIVE DEFENSES

InterSystems asserts the following defenses in response to the allegations contained in Ms. Friedman's charge of discrimination: (1) Complainant has failed to state a claim upon which relief can be granted and has failed to establish a prima facie case with respect to claims made based upon gender discrimination; (2) Complainant cannot prove that the Company had any discriminatory animus or that there was a causal connection between her gender and any action taken by the Company; (3) the Company's actions were taken in good faith, in furtherance of legitimate business reasons and were not discriminatory; (4) Complainant cannot prove that the Company's legitimate nondiscriminatory reasons for its actions were merely a pretext for gender discrimination; (5) Complainant has failed, and continues to fail, to mitigate her alleged damages.  In addition, InterSystems reserves any right it might have to pursue a jury trial in this matter.

We trust that the information provided herein will be useful in your consideration of this matter.  If we can be of further assistance, please do not hesitate to contact the undersigned.

Very truly yours,

HOLLAND & KNIGHT LLP

Liam T. O'Connell, Esq.

LTO/wmg

cc:    Timothy K. Cutler, Esq.

# 2161778_v1

Ms. Robin Edwards
August 6, 2004
Page 10

<u>Affirmation</u>

I, Phillip T. Ragon, President and Chief Executive Officer of InterSystems Corporation, state that the factual representations set forth herein are based on my personal knowledge, and I certify and affirm under the pains and penalties of perjury that the facts contained herein are true and accurate to the best of my knowledge, information and belief.

Phillip T. Ragon
President and Chief Executive Officer